IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT MICHAEL HARA,<br><br>    Petitioner,<br><br>  v.<br><br>SANTA CLARA SUPERIOR COURT AT SAN JOSE, and BILL LOCKYER, Attorney General of California,<br><br>    Respondent.<br>_____/ | No. C 04-04810 JSW<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Now before the Court is Petitioner Scott Michael Hara's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 related to his August 2003 conviction for driving under the influence. After considering the administrative record, the parties' papers and arguments, and the relevant legal authority, the Court hereby DENIES the petition for a writ of habeas corpus.

**FACTUAL AND PROCEDURAL BACKGROUND**

Hara was convicted in the Superior Court of California in and for the County of Santa Clara for violating California Vehicle Code § 23152(a) for driving under the influence of alcohol. (Response to Order to Show Cause ("Response to OSC") at 1.) On August 21, 2003, he was sentenced to five years of court probation, a fine of $1,261 by payment of $100 per month, a restricted driving privilege for ninety days, and to fifteen days in county jail. He was also ordered to enroll and complete the first offender drinking driver program. On November 24, 2004, this Court

1  temporarily stayed the fifteen-day county jail portion of Hara's sentence. On January 7, 2005, the
2  Court issued an order extending the stay pending resolution of this habeas petition.
3      At trial, Hara sought to prove his theory of defense that another person was driving his
4  vehicle. (Hara Federal Habeas Petition for Writ of Habeas Corpus and Stay ("Hara Fed. Pet.") at 9.)
5  Arresting Officer Jesus Alonzo testified that on October 3, 2002, around 12:40 a.m., he saw a SUV-
6  type vehicle with a bike rack and a bicycle on the rear portion pass at about 40-45 miles per hour in
7  an area of Campbell where the speed limit was 25 miles per hour. (Trial Transcript ("Tr.") at 45, 46,
8  48, 131.) While following the vehicle, Alonzo testified that he lost track of the SUV for a minute or
9  two. (*Id*. at 51.) Alonzo testified that he later observed the SUV on a side street in the driveway of a
10 house. (*Id*. at 53.) Alonzo and the other officers who joined him at the scene saw no other people in
11 the area. (*Id*. at 132-33.)
12     Alonzo determined that the vehicle had been driven recently because of the heat coming from
13 the motor and the pinging noise from the car. (*Id*. at 55-57.) Alonzo found Hara standing and
14 talking on a cell phone behind bushes in front of the house. (*Id*. at 55-56.) In response to Alonzo's
15 questions, Hara admitted the car was his but denied that anyone had moved it in the previous thirty
16 minutes. Hara also told Alonzo that his friends probably gave him a ride home "because he had too
17 much to drink." (*Id*. at 58.) Hara told Alonzo that he did not have the keys to the vehicle, which
18 Alonzo later found in the grass close to the vehicle. (*Id*. at 59-60.)
19     Hara's admission that he had five drinks that night beginning at 11:30 p.m. confirmed
20 Alonzo's suspicions that Hara had been drinking. (*Id*. at 60-61.) Hara was unable to perform some
21 of the field sobriety tests as Alonzo instructed or demonstrated. (*Id*. at 62-65, 68-71.) Alonzo asked
22 Hara if he would take a Preliminary Alcohol Screening ("PAS") test, which Hara refused. (*Id*. at
23 73.) Alonzo testified that he did not inform Hara of his right under California Vehicle Code
24 § 23612(i) to refuse to take the test. (*Id*.) Hara did, however, later agree to give a blood sample for
25 testing. (*Id*. at 73.) The parties have stipulated that the blood sample was tested by the crime
26 laboratory using scientifically approved methods and indicated a blood alcohol ("BAC")
27 concentration of 0.08 percent by weight of alcohol. (*Id*. at 74-75.)
28     Certain procedures and findings in the trial court are the subject of Hara's habeas petition.

2

For example, during Hara's counsel's cross-examination of Officer Alonzo, the trial court sustained the prosecutor's objection to a question regarding whether Alonzo had a warrant to enter the house. (*Id*. at 115-16.) Moreover, during a voir dire to examine possible juror misconduct, the juror in question stated that Alonzo said "Go Niners" to him as they were leaving the building, but that the juror did not respond. (*Id*. at 142-43.) The juror also stated that he was not aware of any conversation with Alonzo on the day when Alonzo testified. (*Id*. at 143.) In addition, the trial court admitted into evidence over the defense's foundation objection a chart that a prosecution witness had used to explain his opinion regarding correlations between alcohol consumption and human impairment. (*Id*. at 157-163, 222.) Finally, the trial court allowed the use of Hara's refusal to take a PAS test as evidence of consciousness of guilt, failed to take judicial notice of Hara's statutory right to refuse the PAS test, and did not allow the special jury instruction on this same subject. (Hara State Petition for Writ of Habeas Corpus ("Hara State Pet."), Ex. A.)

   Hara unsuccessfully appealed his conviction to the Appellate Division of the Superior Court ("Appellate Division"), which issued a reasoned opinion with respect only to his last three claims concerning the evidence, judicial notice and jury instruction about a PAS test. (*Id*.) The Appellate Division concluded that the trial court's errors with respect to these three claims were harmless. (*Id*.) Raising the same six issues as presented in his federal habeas, Hara additionally filed a state petition for writ of habeas corpus in the California Court of Appeal, which denied the petition in an unreasoned denial dated June 22, 2004. (*Id*., Ex. C.) On October 20, 2004, the Supreme Court of California also denied his petition for review. (Response to OSC, Ex. B.) On November 12, 2004, Hara filed this federal habeas petition. Pursuant to this Court's Order to Show Cause dated November 24, 2004, the Respondent filed an answer to the petition and a Response to the Order to Show Cause on December 10, 2004 and December 8, 2004, respectively. On December 21, 2004, Hara filed a reply.

**STANDARD OF REVIEW**

**A. Standard of Review of a Petition for a Writ of Habeas.**

   The Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Because the petition in this case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the AEDPA's provisions apply. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499-1500 (9th Cir. 1997) (en banc). Under the AEDPA, a district court may not grant a petition with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). If no Supreme Court precedent controls on the legal issue the petitioner raised in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law. *Stevenson v. Lewis*, 384 F.3d 1069, 1071 (9th Cir. 2004). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court correctly identifies the governing legal principle from Supreme Court decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. A federal court on habeas review "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting a writ. *Id.* at 409.

To assess whether habeas relief is warranted, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). If that state court only considered state law, the federal court must determine whether the state law, as explained by the state court, is "contrary to" clearly established governing federal law. *Lockhart v. Terhune,* 250 F.3d 1223, 1230 (9th Cir.

4

2001). If the state court disposed of a constitutional error as harmless under an appropriate standard of review, the federal court must determine whether the state court's application of the standard was objectively unreasonable pursuant to section 2254(d)(1). *Medina v. Hornung*, 386 F.3d 872, 878 (9th Cir. 2004).

However, where the highest state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, the federal court must review the record to decide whether the state court's decision was objectively reasonable pursuant to section 2254(d)(1). *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Thus, the federal court should conduct "an independent review of the record" to determine whether the state court's resolution or decision was an unreasonable application of clearly established federal law. *Id.*; *see also Fisher v. Roe*, 263 F.3d 906, 914 (9th Cir. 2001) (holding that "while we are not required to defer to a state court's decision when the court gives us nothing to defer to, we must still primarily focus primarily on Supreme Court cases in deciding whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law").

In addition, a federal habeas court must determine whether a state trial court's credibility finding is an "unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." *Rice v. Collins*, __ U.S. __, 126 S. Ct. 969, 974 (2006) (quoting 28 U.S.C. § 2254(d)(2)). Similarly, a court must presume that any determination of a factual issue made by a state court is correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.     Specific Standard of Review for Each of Hara's Six Claims.**

Hara articulates six claims in his petition. First, he argues that the trial court's refusal to allow his counsel the right to cross-examine the arresting officer in matters pertaining to Hara's theory of defense denied him due process of law under the Sixth Amendment and Confrontation Clause of the Federal Constitution. Second, he argues that allowing a biased juror to remain on the jury panel denied Hara an impartial jury and thus due process in violation of the Sixth and Fourteenth Amendments. Third, he argues that the trial court prejudiced him by admitting a demonstrative chart into evidence over a foundation objection. Fourth, Hara argues that the trial

5

court denied him due process when it allowed into evidence as a consciousness of guilt the fact that Hara exercised his statutory right to refuse a PAS device test. Fifth, he argues that the trial court's failure to follow California Evidence Code § 451, requiring giving the jury mandatory judicial notice of Hara's statutory right to refuse a PAS test, denied him a fair and impartial trial under the Sixth and Fourteenth Amendments. Finally, Hara argues that the trial court's refusal to instruct the jury on his statutory right to refuse a PAS test denied him due process of law and a fair and impartial trial.

In this case, for Hara's first and third claims, this Court must decide, based on an independent review of the record, whether the denials by the Supreme Court of California and California Court of Appeal were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Fisher*, 263 F.3d at 914; *see also Himes*, 336 F.3d at 853. Given the factual basis for Hara's second claim (juror bias), this Court reviews the record to determine if the trial court's finding of no juror bias "was based on an unreasonable determination of the facts in light of the evidence presented in the State [trial] court proceeding." 28 U.S.C. § 2254(d)(2). For Hara's fourth, fifth and sixth claims, this Court looks through to the decision of the Appellate Division, which addressed these claims on the merits. *See LaJoie*, 217 F.3d at 669 n.7. Because the Appellate Division dismissed these three claimed errors as harmless under California law, this Court must determine whether the harmless error analysis was objectively unreasonable, and whether California law, as explained by the Appellate Division, is contrary to clearly established governing federal law. *See Medina*, 386 F.3d at 878; *see also Lockhart*, 250 F.3d at 1230.

**ANALYSIS**

**A.     Hara's Claim Regarding Restricted Cross-Examination.**

   **1.     Legal Standard.**

The Confrontation Clause "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original). Trial judges retain broad latitude to impose "reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'

6

safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

To state a violation of the Confrontation Clause, a criminal defendant must show that the trial court prohibited him from engaging in otherwise appropriate cross-examination "designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Id*. at 680 (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)).  A court must inquire whether: (1) the evidence was relevant; (2) other legitimate interests outweighed the defendant's interests in presenting the evidence; and (3) the jury had sufficient information, despite the exclusion of evidence, to assess the credibility of the witness.  *See United States v. James*, 139 F.3d 709, 713 (9th Cir. 1998).

The denial of the opportunity to cross-examine an adverse witness is not, however, a type of constitutional error that is deemed prejudicial per se. *Van Arsdall*, 475 U.S. at 682.  Rather, such an error is subject to the harmless-error analysis. *Id*. at 684.  Thus, a reviewing court must determine whether the error was harmless beyond a reasonable doubt, assuming the full damaging potential of the cross-examination. *Id*.  Five factors bear on this determination: (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the witness's testimony on material points; (4) the extent of cross-examination that was permitted; and (5) the overall strength of the prosecution's case. *Id*.  The reviewing court "should be able to decide whether the not-fully-impeached evidence might have affected the reliability of the factfinding process at trial." *Id*.

**2.     The Trial Court's Limitation on Cross-Examining Officer Alonzo Does Not Constitute a Denial of Hara's Sixth Amendment Confrontation Right.**

Hara contends that the trial court's limitation of his counsel's cross-examination of Officer Alonzo into the legality of the search of Hara's house violated the Confrontation Clause because he was unable to elicit his theory of defense, which was that someone else was driving the vehicle.  The Respondent argues that Hara has not established that the trial court excluded relevant or significant evidence affecting Alonzo's credibility, and that he never sought to develop any factual basis for his

7

claimed theory of defense.

The cross-examination into whether Alonzo's search of Hara's house was proper may have been to elicit two types of information: first, evidence of another possible driver of Hara's vehicle, or second, evidence of bias or a reason to doubt Alonzo's testimony. With respect to the first type of information, such cross-examination appears cumulative because Alonzo had already testified that the other officers involved were trying to locate the other possible driver of Hara's vehicle, and that he did not know if somebody else had driven Hara's vehicle. (Tr. at 114, 116.) With respect to the second type of information, the first *James* factor favors Hara, since bias evidence is always relevant in terms of discrediting the witness. *See Davis*, 415 U.S. at 316. The theory would be that testimony of a police officer who performs searches illegally is not very credible. The second *James* factor weighs slightly against Hara because counsel's inquiry into the constitutionality of the search of the house had very little to do with whether Hara was the driver of the vehicle or whether the police had located another driver of the vehicle, which was Hara's theory of defense. Thus, this would have tended to confuse the issues for the jury. The final *James* factor weighs strongly against Hara because the jury had otherwise sufficient evidence to assess Alonzo's credibility. Specifically, Hara's counsel elicited testimony from Alonzo that Alonzo did not advise Hara of his right to refuse taking the PAS test, in contravention of state law. (Tr. at 118.) Hara's counsel also brought out Alonzo's failure to advise Hara of his right to refuse the additional field sobriety tests performed at the station. (*Id*. at 121.) In addition, Hara's cross-examination cast doubt on the credibility of Alonzo's visual identification of Hara's vehicle. (*See id*. at 85-91.) These blows to Alonzo's testimony by themselves afforded the jury sufficient evidence to assess the credibility of his testimony. Therefore, Hara has not stated a claim for a violation of the Confrontation Clause.

In addition, even if Hara has established such a violation, the error would be harmless under the five relevant factors. First, Alonzo's testimony is important to the prosecution's case because he was one of only two witnesses, and the only witness used to connect Hara to the vehicle. (*See id*. at 50-55.) Thus, this factor thus favors Hara. Second, in establishing that someone else could have driven Hara's vehicle, which is Hara's stated theory of defense, the excluded evidence Hara's counsel sought on cross-examination was cumulative because Alonzo had already testified to the

8

possibility of, and the search for, another person. (*Id*. at 114, 116.) As a result, this factor cuts against Hara. Third, because Alonzo's testimony was central to the prosecution's case, there is no evidence corroborating his testimony on whether Hara was driving the vehicle while inebriated. Hara's counsel, however, never asked Alonzo about the fruits of the search of Hara's house, but only about its legality. This contributed to the lack of corroborating evidence with respect to Hara's theory of defense. Fourth, the trial court afforded Hara's counsel a thorough cross-examination of Alonzo. (*Id*. at 77-129, 139-148.) Fifth, the prosecution's case is strong overall, comprising testimony regarding Hara's inebriated state and his driving in such state, and a blood sample indicating a BAC concentration of 0.08 percent by weight of alcohol (*See id*. at 66, 74-75.) On balance, any error would thus be harmless.

Therefore, the Court of Appeal's unreasoned denial was not contrary to, or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254 (d)(1).

**B.  Hara's Claim Regarding Failure to Remove a Biased Juror.**

**1.  Legal Standard.**

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors. U.S. Const. amend. VI. "Because impartial jurors are the cornerstone of our system of justice and central to the Sixth Amendment's promise of a fair trial, we 'guard jealously the sanctity of the jury's right to operate freely as possible from outside unauthorized intrusions purposefully made.'" *United States v. Dutkel*, 192 F.3d 893, 894 (9th Cir. 1999) (quoting *Remmer v. United States*, 350 U.S. 377, 382 (1956) ("*Remmer II*")). Any private communication or contact "with a juror during a trial about the matter pending before the jury" is deemed presumptively prejudicial. *Remmer II*, 350 U.S. at 379 (quoting *Remmer v. United States*, 347 U.S. 227, 229 (1954) ("*Remmer I*")). The Constitution, however, "does not require a new trial every time a juror has been placed in a compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Brief encounters between a third party and a juror are generally less prejudicial than a continuous and intimate association. *See Turner v. Louisiana*, 379 U.S. 466, 473 (1965).

Trial courts facing claims of juror bias raised by the parties "may" hold a hearing, which "is sufficient" to satisfy due process. *Tracey v. Palmateer*, 341 F.3d 1037, 1043-44 (9th Cir. 2003)

9

(citing *Smith*, 455 U.S. at 217, 218).  For example, in *United States v. Sears*, the Ninth Circuit endorsed the trial court's finding of no juror misconduct where a juror had remarked "nice job" or "good job" to a FBI agent who had just testified against the defendant.  663 F.2d 896, 899-900 (9th Cir. 1981).  The Ninth Circuit found it sufficient that the trial court questioned the juror extensively enough to satisfy itself, in light of the juror's explanation for his statement, that the juror was not biased.  *Id*. at 900.

### 2. The Trial Court Did Not Unreasonably Determine that No Juror Bias Existed Based on the Evidence at Trial.

Here, Hara challenges the trial court judge's finding, based on the state court record, that the juror's contacts with Alonzo did not warrant the juror's removal.  In answer to the trial judge's questions in the presence of only the allegedly biased juror, Hara, and both attorneys, the juror first relayed that he had not responded to Alonzo's statement "Go Niners" to him as they were leaving the building.  (Tr. at 142-43.)  Contrary to Hara's counsel's account, the juror also stated that he did not recall saying "Good job" to Alonzo during a break while Alonzo was still at the witness stand.  (*Id*. at 142-44.)  The trial judge reminded the juror not to speak to any attorney or witness involved in the case and called the juror back in a second time to assure himself, through the juror's answers, that the juror was keeping an open mind about the case until the close of the evidence.  (*Id*. at 143, 145-46.)

With respect to the "Go Niners" statement, no presumption of prejudice arose because the encounter was brief and did not relate to the matter pending before the jury, Hara's guilt or innocence.  *See Turner*, 379 U.S. at 473; *see also Remmer II*, 350 U.S. at 379.  In regards to the second alleged contact, similar to *Sears*, the trial judge here inquired into the situation and accepted the juror's statements that he did not recall any such conversation with Alonzo and that he was keeping an open mind until the end of the case.  In light of the evidence, the trial court's refusal to remove the juror based on its factual finding of no juror bias or misconduct was not an unreasonable determination.  *See Rice*, __ U.S. __, 126 S. Ct. at 974.  Hara has not presented clear and convincing evidence sufficient to rebut the presumption of correctness of the trial court's factual findings.  *See* 28 U.S.C. § 2254(e)(1).  Therefore, Hara's claim regarding juror bias fails.

**C.    Hara's Claim Challenging Admission of Demonstrative Evidence without Foundation.**

**1.    Legal Standard.**

The admission of evidence is not subject to federal habeas review unless the admission violates a specific guarantee or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). Failure to comply with state rules of evidence is neither a necessary nor sufficient basis for granting federal habeas relief on due process grounds. *See Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). Thus, the due process inquiry for a federal habeas court is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *See Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). Only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. *See Jammal*, 926 F.2d at 920.

**2.    The Admission into Evidence of the Chart Did Not Render the Trial Fundamentally Unfair.**

Hara argues that the jury's verdict of guilty of the violation of California Vehicle Code § 23152(a) (being impaired while driving) but not guilty of California Vehicle Code § 23152(b) (driving with a BAC of 0.08 or greater) evinces the prejudice that the admission of the demonstrative evidence created. The demonstrative evidence in question was a chart prepared by Larry Turner, a forensic toxicologist testifying for the prosecution, which described the expected reactions and characteristics of "the general individual when consuming alcohol" at "different points of intoxication." (Tr. at 159-160.) The trial court accepted this chart into evidence over the objection of Hara's counsel. (*Id*. at 222.) The record reveals, however, that admitting the chart into evidence was not so prejudicial as to render the trial fundamentally unfair. In particular, Turner testified to the contents of the chart, explaining what one could expect from an individual consuming alcohol at different points of intoxication: a BAC of 0.00, 0.02 to 0.04, 0.05 to 0.06, and so on up through 0.40 to 0.50. (*Id*. at 160-64.) Because Turner used the chart in presenting his opinions, the chart did not provide any information for the jury's consideration beyond what Turner's live testimony had already provided. There was no inference the jury could have drawn from the chart that it could not

11

have drawn from Turner's testimony. *See Jammal*, 926 F.2d at 920. Thus, any possible prejudice flowing from the admission of the chart into evidence did not make Hara's trial fundamentally unfair. *See Walters*, 45 F.3d at 1357. Consequently, Hara's third claim regarding the admission of the demonstrative chart fails.

**D.   Hara's Claim Regarding Admission into Evidence of His Refusal to Take the PAS Test.**

**1.   Legal Standard.**

Having the benefit of the Appellate Division's dismissal on the merits of this claim as harmless under California law, this Court must determine whether the harmless error analysis was objectively unreasonable, and whether California law, as explained by the Appellate Division, is contrary to clearly established governing federal law. *See Mitchell v. Esparza*, 540 U.S. 12, 18 (2003); *see also Medina*, 386 F.3d at 878; *Lockhart*, 250 F.3d at 1230. "A constitutional error is harmless when 'it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Mitchell*, 540 U.S. at 17-18 (quoting *Neder v. United States*, 527 U.S. 1, 15 (1999)). Under clearly established federal law, harmless errors may be quantitatively assessed in the context of other evidence presented to determine their effect on the trial. *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993); *Arizona v. Fulminante*, 499 U.S. 279, 307-08 (1991). A habeas petitioner deserves relief only if the trial error resulted in "actual prejudice" or "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. If the federal habeas court is convinced that the error did not influence the jury, or only had a very slight effect, the verdict and judgment should stand. *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995) (citing *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)).

**2.   The Appellate Division's Harmless Error Analysis Was Not Objectively Unreasonable.**

The Appellate Division cited *People v. Golston*, 188 Cal. App. 3d 346 (Cal. Ct. App. 1986), in support of its conclusion that the trial court's error in admitting evidence of Hara's refusal to take the PAS test, in contravention of California Vehicle Code § 23612(i), was harmless. Specifically, the Appellate Division found the error harmless "in view of the overwhelming evidence of [Hara's] guilt." (Hara State Pet., Ex. A.) In *Golston*, the error was harmless because the evidence presented

did not make it reasonably probable that the result would have been different. 188 Cal. App. 3d at 354. The *Golston* court considered such things as the strength of the prosecution's claim against the defendant, the credibility of the defendant's testimony, and the inferences the jury would need to make in order to reach a different result. *Id*. In addition, California law, as represented by the *Golston* decision, is not contrary to clearly established federal law because both look to the entire record to determine whether the trial error prejudiced the jury verdict. *See Mitchell*, 540 U.S. at 18-19; *Brecht*, 507 U.S. at 637; *Golston*, 188 Cal. App. 3d at 354.

The Appellate Division did not unreasonably apply the harmless error analysis. The jury heard testimony, during both the direct and cross-examination of Officer Alonzo, that Hara had the right not to take the PAS test. (Tr. at 73, 118.) Moreover, the jury heard Alonzo's testimony that Hara told him that "his friends probably gave [Hara] a ride home because he had too much to drink." (*Id*. at 58.) When further combined with the uncontested BAC test results indicating the presence of alcohol in Hara's blood (*id.* at 74-75), Hara has not shown that the trial court's error in admitting evidence that Hara refused to take a PAS test actually prejudiced or had a substantial and injurious effect in reaching the jury's verdict. *See Brecht*, 507 U.S. at 637. Thus, Hara is not entitled to habeas relief based on his claim that the trial court erred by admitting this evidence. *See O'Neal*, 513 U.S. at 437.

E. **Hara's Claims Regarding Failure to Take Judicial Notice of, or Instruct the Jury on Hara's Right to Refuse a PAS Test.**

1. **Legal Standard.**

Hara contends that the trial court's failure to take judicial notice of, and consequently instruct the jury, on his right under California Vehicle Code § 23612(i) to refuse to take a PAS test further denied him a fair and impartial trial. The Respondent argues that the trial court's error does not warrant habeas relief and that the error was harmless because the jury already knew of Hara's right to refuse a PAS test.

The standard for these two claims is the same as that for the previous claim. Thus, this Court must determine whether the trial error resulted in "actual prejudice" or "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Given the close

13

factual nature of these claims to Hara's fourth claim above and the Appellate Division's identical analysis, the Court need not repeat that California law, as explained by the Appellate Division, is not contrary to clearly established governing federal law. *See Lockhart*, 250 F.3d at 1230.

### 2. The Trial Court's Errors Relating to the PAS Test Did Not Actually Prejudice Hara.

The Appellate Division concluded that the trial court erred by allowing the prosecution to use Hara's refusal to take a PAS test as evidence of consciousness of guilt despite his right to refuse to take the test under California law. (Hara State Pet., Ex. A.) The Appellate Division found that "[i]t follows that the trial court also erred in failing to take judicial notice of, and allow the special jury instruction on this same subject." (*Id.*) The Appellate Division, however, considered these errors harmless for the same reasons as for Hara's claim regarding the admission into evidence of his refusal to take a PAS test. (*Id.*) Here also, the Appellate Division's harmless error analysis was not objectively unreasonable in light of the strength of the prosecution's case. Specifically, the jury knew that (1) Hara had a statutory right to refuse to take a PAS test, (2) Hara had alcohol present in his blood, and (3) there was no indication that the police's investigation turned up another person who Hara claimed was the driver. (*See* Tr. at 66, 73-75, 116, 118.) Because the Court is convinced that the error did not influence the jury, or at most only had a very slight effect, the verdict and judgment should stand. *O'Neal*, 513 U.S. at 437.

### CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

**IT IS SO ORDERED.**

Dated: April 6, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE